# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5203 | **DATE** | 3/23/2004 |
| **CASE TITLE** | DSMR, LLC, et al. vs. Goldberg | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Order. For the reasons given in the attached memorandum opinion and order, plaintiffs' motion for summary judgment [32-1] is granted, and defendant's motion for summary judgment [35-1] is denied. Case Terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 25 2004 | |
| X | Docketing to mail notices. | | date docketed | 48 |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RJ/KB | courtroom deputy's initials | 2004 MAR 24 PM 2:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DSMR, LLC, ET AL.,)
)
      Plaintiffs,)
)
v.) Case No. 02 C 5203
)
ELLIOTT GOLDBERG,) Judge Joan B. Gottschall
)
)
      Defendant.)

**DOCKETED**
**MAR 2 5 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiffs DSMR, LLC, and Donovan Industries, Inc., and defendant Elliott Goldberg dispute ownership of the Resist-A-Band trademark, which identifies a type of resistive exercise band commonly used in physical therapy. Both parties claim that they acquired rights to the Resist-A-Band mark from SPRI Medical & Rehab Products Corp. ("SPRI") in separate bankruptcy proceedings. Plaintiffs originally brought this action against defendant in the United States District Court for the Middle District of Florida, seeking declaratory and injunctive relief under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the case was later transferred to this court. Both parties have filed cross-motions for summary judgment, asserting exclusive ownership in and rights to the Resist-A-Band trademark. For the reasons that follow, the court finds that plaintiffs DSMR and Donovan Industries possess common law rights arising from their commercial use of the Resist-A-Band trademark and that defendant Goldberg has no rights to the mark. Thus, plaintiffs' motion for summary



judgment is granted and defendant's motion for summary judgment is denied.

BACKGROUND

The parties in this case have filed cross-motions for summary judgment: plaintiffs DSMR and Donovan Industries seek a declaration that they own the rights to the Resist-A-Band trademark through a series of assignments originating with SPRI and though their use of the mark in commerce; and defendant Goldberg claims that all earlier assignments and purported sales of the trademark are invalid and that he owns the mark through a later purchase agreement with SPRI. The court notes at the outset that substantial relationships exist among the entities involved with this litigation and the Resist-a-Band trademark. Gary Diaz owns both R. Gary Diaz Enterprises, Inc. ("Diaz Enterprises") and Sports Medical Rehab Products, Inc. ("Sports Medical"), John Vuckovich is both the president of Sports Medical and a former officer of SPRI, and Donovan Industries holds an ownership stake in DSMR. Further, the law firm of Foley & Lardner represented both SPRI and Sports Medical in their trademark matters.

*Sale and Assignment of the Resist-A-Band Trademark*

For the purpose of this litigation, SPRI is the original owner and first entity to attempt registration of the Resist-A-Band trademark. In August of 1999 SPRI filed for bankruptcy protection under Chapter 11 in the United States Bankruptcy Court for the Northern District of Illinois. As part of the bankruptcy proceedings, SPRI filed a Schedule of Personal Property which listed patents, copyrights, and other intellectual property, including the "Resist-A-Band Trademark in Process." On September 23, 1999, the bankruptcy court entered an agreed order authorizing the sale of SPRI's assets to Diaz Enterprises, which provided in part:

> 1) all of the DEBTOR'S assets including but not limited to, accounts receivable inventory, machinery, computer equipment, all causes of action, telephone numbers (to the extent possible), the DEBTOR'S right, title, and interest in any and all of its intellectual property, including but not limited to license trademarks (sic), trade secrets, customer lists, trades names, and associated good will.

From plaintiffs' perspective, the agreed order (and subsequently executed bill of sale) sold outright SPRI's rights, title, and interest in the Resist-A-Band trademark to Diaz Enterprises. Defendant Goldberg, however, regards it differently. Goldberg was a party to the agreed order to the extent that he and his companies agreed to release certain claims against SPRI in exchange for money. From his point of view, since Resist-A-Band was only a "trademark in process" when SPRI declared bankruptcy, it did not constitute intellectual property or a trademark as defined in the agreed order and therefore was not sold to Diaz Enterprises.

Notwithstanding Goldberg's denial of the sale of the Resist-A-Band mark from SPRI to Diaz Enterprises, the mark continued to pass by assignment and sale to several entities, each of whom believed that the transaction preceding theirs was legitimate. First, shortly after completing its purchase of SPRI's assets, which it thought to include the Resist-A-Band mark, Diaz Enterprises assigned its rights in the mark to Sports Medical. To reflect this and the earlier assignment of the mark from SPRI to Diaz Enterprises, the parties filed notices of assignment with the United States Patent and Trademark Office ("PTO"). In October of 2000, the PTO issued Notice of Recordation of Assignment Documents reflecting both transactions.[1] Then, one year later in October of 2001, Sports Medical and plaintiff DSMR

---

[1] The PTO maintains an Assignment Services Division that is separate from Trademark Operation. Recording a document with the Assignment Services Division does not change the ownership status in the Trademark Reporting and Monitoring System ("TRAM"). The Assignment Services Division does not determine the validity of an assignment document or the effect on the ownership of a mark unless the assignee attempts to take action in connection

executed an "Asset Purchase and Sale Agreement," in which Sports Medical purported to sell DSMR numerous assets, including inventory, equipment, license agreements and other contracts, accounts receivable, and intellectual property (including trademarks). Finally, in March of 2002, the Resist-a-Band mark was assigned to Donovan Industries from DSMR, and this transfer was reflected in a PTO Notice of Recordation of Assignment Document dated May 14, 2002.

SPRI eventually converted its bankruptcy to Chapter 7, and in February of 2000 the bankruptcy court held a hearing to determine whether to authorize the trustee's request to sell SPRI's interest in the Resist-a-Band trademark to Goldberg for $2,500 plus an interest in future royalties. DSMR appeared at this hearing and objected to the proposed sale because it believed that it had acquired the mark through the 1999 bankruptcy proceeding and the subsequent assignments described above. The bankruptcy court declined to determine whether SPRI retained any interest in the Resist-a-Band trademark, and stated "[t]he trustee is only selling what the trustee has, and the trustee is choosing to let somebody else decide whether that has any value. The only thing I'm really worried about is that the buyer is fully aware of the circumstances and, apparently, the buyer is." The court then authorized the trustee to sell the Resist-a-Band mark to Goldberg "subject to all existing liens, claims, and encumbrances...."

---

with an application or registration. *See* 37 C.F.R. §3.54; Trademark Manual of Examining Procedure at §503.01 (3d ed., rev. 2003).

*Registration and Use of the Resist-A-Band Trademark*

Separate from the chain of title question are the issues related to the Resist-A-Band mark's use in commerce and its registration. Trademark prosecution for the Resist-A-Band mark began well before SPRI declared bankruptcy or took steps to sell or assign the trademark. On February 10, 1998, SPRI filed an intent to use ("ITU") application with the PTO. The filing of an ITU, which must be based on the applicant's showing of a "bona fide intention" "to use a trademark in commerce," establishes priority of use as of the date of filing, provided the applicant files a statement of use within 6 or up to 24 months. *See* 15 U.S.C. § 1051(b). At the time SPRI filed its ITU for Resist-A-Band, SPRI had neither sold any products with the mark nor had any concrete plans to develop, market, or sell any such products; and to date, SPRI has never made or sold a Resist-A-Band product.

As early as March 1, 2000, Sports Medical began using the Resist-A-Brand mark in conjunction with its color-coded resistive exercise band products. John Vuckovich, the president of Sports Medical who also remained an officer of SPRI, stated in his deposition that SPRI was aware of Sports Medical's use and that SPRI was letting it happen. At that time, neither SPRI, nor defendant Goldberg, nor any other company had used the Resist-A-Brand mark in commerce. However, prior to Sports Medical's use, in December of 1999, SPRI had asked for an extension of time in which to file a statement of use for the mark, as required by 15 U.S.C. § 1051(c) to complete the registration process. When SPRI eventually filed its statement of use with the PTO in June of 2000, it filed the application under its own name but submitted evidence of Sports Medical's use of the Resist-A-Band trademark to prove that the mark had been used in commerce. None of SPRI's evidentiary submissions to the PTO

showed the name SPRI in conjunction with the Resist-A-Brand mark and SPRI never claimed to make or sell such products. Though registration of the mark was delayed for several months due to an administrative filing error (the PTO found the statement of use unacceptable because one of the pages began mid-sentence), on January 29, 2002, the PTO issued Registration No. 2,534,415 for the Resist-a-Band trademark, and the registration showed title to be in SPRI.[2]

DISCUSSION

The parties in this case have filed cross-motions for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact, and the party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). In considering cross-motions for summary judgment, the court must examine all the admissible evidence and "construe all inferences in favor of the party against whom the motion under consideration is made." *Allen v. City of Chicago*, 351 F.3d 306, 311 (7th Cir. 2003). Here, although both parties argue that several facts material to the success of the other party's summary judgment motion are "in dispute," the court finds instead that the parties' quarrel stems from their conflicting opinions about trademark law and the legal effect of the documents purporting to buy, sell, assign, and register the Resist-A-Band mark. Thus devoid of any genuine issue of material fact and chiefly concerning a matter of law, this case may properly be decided on summary judgment.

---

[2] Since the recording of the assignment documents did not update the TRAM, the normal practice of the PTO would be to issue the registration in the name of the original applicant. The PTO will issue a registration in the name of an assignee, if the assignee files a written request that the registration be issued in its name and records the appropriate document in the Assignment Services Division. Here, DSMRand Donovan Industries have never requested that the PTO issue the registration in either name. *See* 37 C.F.R. §3.85; Trademark Manual of Examining Procedure at §502.01.

Plaintiffs DSMR and Donovan Industries argue that they own the right to use the Resist-a-Band mark because they bought the trademark from Sports Medical, who was the first entity to use the mark in commerce and acquire common law rights in the mark. Though the parties dispute whether the assignment of the Resist-A-Band mark was valid as between SPRI and all later purported buyers of the trademark, the court need not examine each link in the chain of transfer to determine who owns the mark. Nor must the court determine which, if any, of the various PTO filings regarding the Resist-A-Band trademark establish ownership under the Lanham Act. Since an entity acquires rights in a trademark only through actual commercial usage, it is possible that one company could "own" the mark on paper but lose its rights if another company establishes bona fide commercial use of the trademark first. In this case, it is undisputed that Sports Medical was the first to use the Resist-A-Brand mark in commerce and to establish common law rights in the trademark. It is also undisputed that plaintiffs later bought the trademark from Sports Medical and have continued to use of the mark in commerce ever since. From these facts the court can conclude that plaintiffs hold ownership rights in the Resist-A-Band trademark which are enforceable against defendant Goldberg's challenges.

Trademarks are unlike other forms of intellectual property, such as patents, in that an entity only acquires rights in a trademark through the commercial use of the mark. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999) ("The party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it."); *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 879 (N.D. Ill. 1999) ("A trademark owner must also show

that the mark has been in public use."); *S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1018 (N.D. Ill. 1998) ("Trademark rights are acquired by adoption and use, not by registration."); *S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 805 (N.D. Ill. 1998) ("Although registration establishes a rebuttable presumption that the mark was first used on the filing date, . . . [s]imply filing an application is not sufficient to create rights in the mark."). Also unlike other forms of intellectual property, a trademark application is always subject to previously established common law trademark rights of another party. *Johnny Blastoff*, 188 F.3d at 435.

Under the common law, ownership is conferred on "the person who employs the 'first actual use of a mark in a genuine commercial transaction.'" *Stone Age Equip.*, 12 F. Supp. 2d at 805 (quoting *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998)). Said another way, "[u]nder the common law, one must win the race to the marketplace to establish exclusive use of the mark." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). To establish use, the mark must be attached to the product or service sold to the public, and the use must be continuous and bona fide. *Stone Age Equip.*, 12 F. Supp. 2d at 805. The amount of activity sufficient to constitute use is a factual question determined on a case by case basis. *Id.* "The guiding principle is that the activity be 'sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'" *Id.* (quoting *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1266 (5th Cir.1975)).

Requiring use before a party acquires trademark rights supports many important public policies. "By insisting that firms use marks to obtain rights in them, the law prevents

entrepreneurs from reserving brand names in order to make their rivals' marketing more costly." *Zazu Designs*, 979 F.2d at 503. Public sales also provide others with notice that they should not invest resources to "develop a mark similar to one already used in the trade." *Id.* See also William M. Landes and Richard A. Posner, *Trademark Law: An Economic Perspective*, 30 J.L. & Econ. 265, 281-84 (1987). Moreover, the use requirement rewards those who act quickly to bring their goods to the marketplace. *Zazu Designs*, 979 F.2d at 504. Finally and perhaps most importantly, use in commerce allows consumers to associate a mark with the user's goods. *Id.* at 503.

Here, plaintiffs DSMR and Donovan Industries satisfy the requirements for use of the Resist-A-Band trademark under common law. First, it is undisputed that plaintiffs and their immediate predecessor, Sports Medical, are the first and only companies to use the Resist-a-Band mark in commerce. Second, plaintiffs and Sports Medical have used the mark in conjunction with resistive exercise bands continuously for over three years, and since 2001, DSMR and Donovan Industries have sold over $500,000 worth of goods under the Resist-A-Band mark. Third, both SPRI and defendant Goldberg, as well as other competing companies, had contemporaneous notice of plaintiffs' and Sports Medical's commercial use of the trademark both in the resistive band market and through SPRI's registration of the mark with the PTO, which was known by all to be supported by Sports Medical's commercial use. Finally, since no other company (at least as far as the court has been made aware) sells any goods using the Resist-A-Band mark, it seems safe to say that consumers have come to associate the trademark with DSMR's and Donovan Industries' products.

Despite this clear evidence of use by plaintiffs and Sports Medical, Goldberg insists that SPRI retains ownership of the Resist-A-Band trademark because it is the registered owner of the mark. Even assuming that SPRI never executed a valid sale or assignment of the mark to Diaz Enterprises or anyone other than Goldberg, the flaws in defendant's argument are many, beginning with the fact that "an intent to use a mark creates no rights a competitor is bound to respect." *Zazu Designs*, 979 F.2d at 504. This means that despite SPRI's filing of an ITU application in February of 1998, which Goldberg argues gives SPRI priority over subsequent unregistered users, the Resist-A-Band mark remained available for use by another entity until such time SPRI put the mark to use, which it never did. To find otherwise would lead to an absurd situation where, after learning that a competitor intended to adopt a trademark, a company could file an ITU application for the competitor's intended mark, wait for the competitor to use the mark in commerce, and then submit photographs of the competitor's use in the marketplace in support of its own registration, thereby gaining priority rights and thwarting the competitor's attempt to establish common law rights in the mark. This is essentially the result defendant favors in this case, but the court finds such an outcome both illogical and contrary to well-established trademark law. Therefore, the court rejects defendant's argument that SPRI's ITU application alone, without commercial use of the mark by SPRI, gave SPRI superior rights to the mark over all future unregistered users.

Moreover, while it is undisputed that SPRI was the first to register the mark with the PTO, registration "establishes only a rebuttable presumption of use as of the filing date," *Zazu Designs*, 979 F.2d at 504. Here, there is ample evidence to rebut the presumption that SPRI possessed any rights in the mark after Sports Medical began using it in commerce. First, SPRI

never marketed or sold products under the Resist-A-Band trademark and has admitted that it never planned to. Second, SPRI had actual notice that Sports Medical was selling Resist-A-Band goods months before SPRI filed for registration of the mark. And third, when SPRI filed its application for registration, specifically its statement of use, it was supported by Sports Medical's, and not its own, use of the mark. These undisputed facts establish that Sports Medical and, by extension, DSMR and Donovan Industries, won the race to use the mark and that SPRI's registration came too late to confer any rights on SPRI or, by extension, Goldberg.[3]

Having concluded that plaintiffs acquired common law rights to the Resist-A-Band trademark through their exclusive and continuous commercial use and that defendant has no rights in the mark, the court need not decide whether the mark was properly assigned or licensed from SPRI to Diaz Enterprises or from Diaz Enterprises to Sports Medical, and whether it was properly registered with the PTO.

---

[3] Under the Lanham Act, SPRI could appropriate the benefit of Sports Medical's first use to gain its trademark registration, but only if SPRI controlled the nature and quality of the goods with which the mark was used. 15 U.S.C. § 1055 ("If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be."). Here, however, SPRI had absolutely no control over Sports Medical's or, later, DSMR's and Donovan Industries', use of the Resist-a-Band mark, and neither SPRI nor Goldberg ever used the mark in commerce. Thus, SPRI and Goldberg cannot invoke § 1055 to claim the benefit of Sports Medical's use and obtain superior rights in the mark.

## Conclusion

Plaintiffs' motion for summary judgment is granted. Plaintiffs are entitled to a declaration that they own the rights to use the Resist-A-Band trademark and that defendant has no rights in the mark. Consequently, defendant's motion for summary judgment on his claims for trademark infringement and false designation of origin, as well as his counter-claims, is denied.

ENTERED:

JOAN B. GOTTSCHALL
United States District Judge

March 24, 2004